UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Stephen Harriman,
      Plaintiff

      v.                                    Case No. 14-cv-237-SM
                                            Opinion No. 2015 DNH 028
Patti Kemen, Individually and
on behalf of REMAX Legacy;
Patti Kemen Enterprises, LLC;
Vendor Resource Management, Inc.;
and Federal Home Loan Mortgage
Corp. (a/k/a Freddie Mac),
      Defendants

**O R D E R**

Plaintiff, Stephen Harriman, was severely injured while attempting to remove an above-ground swimming pool for one or more of the named defendants.  In the wake of that accident, he filed this action seeking damages for his injuries.  In his complaint, Harriman advances the following state common law claims: negligence (count one); negligent training and supervision (count two); premises liability (count three); intentional infliction of emotional distress (count four); and negligent infliction of emotional distress (count five).

Pending before the court is defendant Vendor Resource Management, Inc.'s motion to dismiss all claims asserted against it.  For the reasons discussed, that motion is granted.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." <u>SEC v. Tambone</u>, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." <u>Id</u>. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove

the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." <u>Tambone</u>, 597 F.3d at 442.[1]

## Background

Accepting the factual allegations in Harriman's complaint as true, the relevant background is as follows.  In September of 2010, Freddie Mac conducted a foreclosure sale of property located in Windham, New Hampshire, and took title to that property.  Subsequently, it contracted with Patricia Kemen, owner of the Remax Legacy real estate agency in Dover, New Hampshire, to market and sell the property.  Lisa Corbin Walker, a real estate agent in that office, was assigned to oversee clean-up at the property and its eventual sale.

Separately, Freddie Mac had previously contracted with Vendor Resource Management, Inc. ("VRM") to oversee the maintenance, marketing, and sale of many of the properties to which Freddie Mac had taken title by way of foreclosure deed. VRM is a Texas corporation, with an office in Pomona, California.

---

[1]     Parenthetically, the court notes that VRM has attached several documents to its motion to dismiss that are, at least arguably, not properly before the court on such a motion.  <u>See generally</u> <u>Trans-Spec Truck Serv. v. Caterpillar Inc.</u>, 524 F.3d 315, 321 (1st Cir. 2008); <u>Beddall v. State St. Bank & Trust Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998); <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).  While Harriman has not objected, the court has not considered those materials in resolving VRM's motion.

Among other things, VRM was charged with reviewing and approving
any expenses related to preservation, maintenance, and
disposition of the numerous properties owned by Freddie Mac –
including the property in Windham.

In early 2011, Walker asked Harriman if he was interested in
doing the "trash out" for the Windham property.  Harriman had
been performing such work for Walker as an independent contractor
since the end of 2010.  "Trash out" apparently involves removing
debris from the property and, in general, preparing it for sale.
According to Harriman, in an e-mail dated February 16, 2011, he
provided Walker with an estimate for his "trash out" services at
the Windham property so she might submit it to VRM for approval.
That estimate did not, however, include a proposed price for
removing an above-ground pool on the property.  So, Walker asked
Harriman to revise his estimate to include the pool removal,
which he did.  But, according to Harriman, he cautioned Walker
that:

> The estimate contains the removal of the above ground
> pool.  I just want to be clear that this cannot be
> removed until all the snow and ice is melted.  The pool
> liner, if it has one, is going to be filled with up to
> 4 feet of ice on it.  I will not be able to get it out
> right now.

Complaint at para. 26.  In response, Harriman says Walker
admitted that she had "dropped the ball" on this property, should

4

have obtained approval from VRM for Harriman's services long ago, and clean-up at the property was now "a rush." <u>Id</u>. at para. 27. Harriman responded, telling Walker that:

> The pool could not be removed until the ice and snow were gone because even if the pool were removed, there would be a three to four thousand pound chunk of ice on top of the liner, which he would not be able to move and that it would need to melt.

<u>Id</u>. at para. 28.  Nevertheless, says Harriman, Walker pressured him to remove the pool within ten days.  <u>Id</u>.


But, a few days later (before Harriman began any work on the pool), Walker informed him that she had heard from representatives of VRM, who told her that Harriman could leave the pool for "a couple weeks" - presumably to allow the ice to melt - if he was able to secure it in such a way as to prevent anyone from falling into it or otherwise being injured by its presence on the property.  Although he was afforded the option of "securing" the pool and dismantling it in a couple weeks, Harriman elected to dismantle it immediately - in part, it seems, because he says he was unsure how to properly secure it and because he was told the job would not be considered "complete" until the pool was removed.  Complaint at para. 30.

According to the complaint, the subsequent events unfolded as follows:

> Plaintiff could not secure the pool as required because of the ice, so his only alternative was to remove the pool.
>
> Plaintiff was not certain on how to proceed with dismantling the pool because of the ice that was in the pool.  He had never taken a pool down with ice in it.
>
> On March 31, 2011, the date of the incident, Plaintiff attempted to dismantle the pool.
>
> Plaintiff did not drain the pool because he thought it was solid ice, and could not locate any drain spout on the outside of the pool.
>
> After removing the rails and supports from the opposite side of the pool, Plaintiff stood on the side of the pool that was closest to the house.  In an instant, the thick sheet of ice that had covered the top of the pool slid towards Plaintiff, struck him in his leg, and amputated his leg.

Complaint at paras. 34-39.  According to Harriman, defendants' negligent and intentional conduct caused his severe physical, and resulting emotional, injuries.

## Discussion

Harriman's complaint advances four claims against VRM: negligence, negligent training and supervision, intentional infliction of emotional distress, and negligent infliction of emotional distress.

I.   <u>Negligence</u>.

As to Harriman's first two claims, VRM asserts that, as the
complaint makes plain, it had no relationship with Harriman
beyond having approved his bid to perform the trash out services;
each was an independent contractor, with VRM being retained by
Freddie Mac, and Harriman being retained by Walker/Remax.
Accordingly, VRM claims it owed Harriman no legal duties that
might give rise to his negligence or negligent training and
supervision claims.

Harriman's theory of liability is less clear, so it is,
perhaps, best to simply quote from his complaint and legal
memorandum.  He claims that VRM owed him a duty "to use
reasonable care as to instructing [him] as to the performance of
tasks associated with completing a trash out."  Complaint at
para. 41.  He says VRM breached that duty by "requiring [him] to
complete a task for which he was not qualified, requiring him to
undertake a dangerous activity for which he was not trained, and
requiring him to complete the task at an inappropriate time of
the year."  <u>Id</u>. at para. 42.  In other words, Harriman asserts
that VRM owed him a duty to make certain that he was capable of
safely performing the pool-removal service he proposed to
provide.  Additionally, Harriman says VRM owed him a duty to
insure that safeguards were put in place to prevent him from

being injured during the course of that work and/or see to it
that he received proper instruction on how to disassemble the
pool.  Specifically, he says:

> VRM was negligent in hiring Plaintiff to complete the
> trash out because it failed to evaluate Plaintiff's
> qualifications.  VRM was negligent in instructing
> Plaintiff because it failed to provide Remax's agent
> [Walker] with the guidelines that Plaintiff needed to
> follow [to safely disassemble the pool].  VRM failed to
> undertake any inquiry into the feasibility of
> removing/securing a frozen pool and thus failed to
> properly instruct Remax's agent who in turn could not
> properly instruct Plaintiff.

Plaintiff's memorandum (document no. 22) at 6.


    In support of that argument, he relies upon exceptions to
the general rule that an "employer" (here, VRM) is not liable for
the negligence of its independent contractor (Harriman).[2]

> The [New Hampshire Supreme] Court stated that there are
> three exceptions to this general rule: (1) negligence
> of the employer in selecting, instructing or
> supervising the contractor; (2) employment for work
> that is inherently dangerous; and (3) instances in
> which the employer is under a nondelegable duty.

---

[2]     VRM denies the assertion advanced in Harriman's legal
memorandum that VRM was his "employer," and it points out that
Harriman's complaint does not allege that VRM employed or
contracted with him.  To the contrary, in fact, the complaint
alleges that Harriman was retained by Walker/Remax to perform the
trash out services.  See Complaint at paras. 23-24.  See also
Defendant's Reply Memorandum (document no. 25) at 1-2.

Plaintiff's Memorandum (document no. 22) at 4.  See also Lawyers

Title Ins. Corp. v. Groff, 148 N.H. 333, 336 (2002).  Harriman

goes on to argue that:

> One who employs an independent contractor to do work
> which the employer should recognize as necessarily
> creating, during its progress, conditions containing an
> unreasonable risk of bodily harm to others unless
> special precautions are taken, is subject to liability
> for bodily harm caused by them by the absence of such
> precautions, if the employer (a) fails to provide in
> the contract that the contractor should take such
> precautions; or (b) fails to exercise reasonable care
> to provide in some other manner for the taking of such
> precautions.  [The] employer of [an] independent
> contractor may be liable for physical harm caused by
> the contractor carrying out orders or directions
> negligently given by the employer.

Plaintiff's memorandum at 6 (emphasis supplied, citations

omitted).


While Harriman may accurately describe New Hampshire's

common law concerning an employer's liability for the negligence

of its independent contractor, it is unclear how that particular

aspect of New Hampshire law applies in this case.  The principle

upon which Harriman relies (and the various cases and treatises

he cites in support of that principle) stand for the following

proposition: under some circumstances, if an employer fails to

take certain remedial measures, that employer may be liable to

third parties for the negligence of its independent contractor.

Here, however, even assuming VRM may properly be viewed as

Harriman's employer, no third parties were injured in Mr.
Harriman's tragic accident.  Only he, the independent contractor,
sustained injuries as a result of his arguable negligence and he
has failed to point to any law that might impose liability on VRM
for those injuries.

The examples given in Harriman's memorandum underscore this
very point.  In one example, he points out that the "making of
excavation immediately adjoining a public highway involves a risk
of bodily harm <u>to persons traveling the highway</u> unless a fence or
other guard is put up to prevent their falling into the
excavation.  The digging of a trench on a public highway or any
other place <u>where others</u> are entitled to come, by the consent of
the employer or otherwise, involves a <u>risk to them</u> if the ditch
remains open."  <u>Id</u>. at 7 (emphasis supplied).  <u>See also Id</u>. ("One
who entrusts [hazardous] work to an independent contractor
[must] provide for the taking of the necessary precautions <u>to
protect others</u> from the danger which in the absence the work
necessarily involves.") (emphasis supplied).  Each of those
examples speaks to potential liability on the part of the
employer for the negligence of its independent contractor that
caused injury to a third party; none addresses any potential
liability for injuries sustained by the independent contractor
himself.

There appears to be a dearth of law on this particular issue in New Hampshire.[3]  But, as VRM points out, at least one court, the Missouri Court of Appeals, has addressed the question in some detail.  See <u>Lawrence v. Bainbridge Apartments</u>, 957 S.W.2d 400 (Mo.Ct.App. 1997).  In <u>Lawrence</u>, a window washer who had contracted to provide cleaning services as an independent contractor was injured in a fall while providing those services.  Like Harriman, the plaintiff invoked an exception to the general rule that employers are not liable for the negligence of their independent contractors.  Specifically, the plaintiff asserted that because he was performing an inherently dangerous activity, he could recover in negligence against his employer, whom he

---

[3]    In a somewhat related context (i.e., negligent hiring of an independent contractor), the New Hampshire Supreme Court has observed that:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor to do work which will involve a risk of physical harm unless it is skillfully and carefully done.  We first note the prevailing view that the doctrine of negligent hiring does not apply to cases such as this, where the injured plaintiff was an employee of the contractor hired by the defendant.

<u>Richmond v. White Mountain Rec. Ass'n</u>, 140 N.H. 755, 758 (1996) (citations and internal punctuation omitted).  Presumably, then, under the "prevailing view" of the law, the independent contractor himself could not recover from the employer for injuries that he sustained as a result of having failed to "skillfully and carefully" perform the work at issue, nor could he recover on a theory that the employer negligently hired him.

alleged had failed to take reasonable and necessary precautions
to insure against his injury.

The Missouri Court of Appeals disagreed, noting that there
are public policy reasons supporting the rule of law allowing,
under certain circumstances, innocent third parties to recover
from an employer for injuries sustained as a result of its
independent contractor's negligence.  But, as for the independent
contractor himself, he could not recover on a negligence theory
under the "inherently dangerous activity" exception to the
general rule insulating employers from liability for the
negligence of their independent contractors.

> An independent contractor holds himself out as an
> expert who is uniquely qualified and skilled to bid for
> and perform the acts in question.  As an expert, he is
> in a better position to understand the risks and costs
> involved in a particular job and he may demand
> sufficient remuneration and safety measures to cover
> what he believes the attendant risks to be.   In return
> for his bargained-for price, he accepts the allocation
> of the risk.
>
> To allow the independent contractor to recover
> compensation for his injuries from the landowner in
> addition to his negotiated price allows for double
> recovery, if he negotiated a fair price, and allows the
> independent contractor to be rescued from a bad bargain
> in the event he failed to negotiate an adequate price.
> In either case, a rule of liability allowing the
> independent contractor, who performs the work himself
> to recover for his own injuries, offends the objectives
> of tort law because it fails to place the cost on the

        party in the best position to avoid the risk and absorb
        the loss.

Lawrence, 957 S.W.2d at 405.


        Little more need be said.  Harriman has failed to point to
any precedent (whether binding or merely persuasive) or any
learned treatises supporting his negligence claims against VRM.
First, and perhaps most fundamentally, his complaint does not
allege that VRM retained him as an independent contractor.
Instead, Harriman's complaint makes plain that Remax/Walker
retained his services.  Moreover, even if he had credibly alleged
that VRM had contracted with him to perform the trash out
services, he has failed to identify the source or nature of any
duties VRM might have owed to protect him from injury while he
was removing the pool, or to train him to perform that task, or
to supervise his performance of that task.  He has, then, failed
to state the essential elements of a viable negligence claim
against VRM.  Counts one and two of Harriman's complaint must,
therefore, be dismissed.


II.  Negligent and Intentional Infliction.

        Harriman's complaint also fails to set forth the essential
elements of viable claims for either negligent or intentional
infliction of emotional distress.  See generally O'Donnell v. HCA

                                    13

<u>Health Services of N.H.</u>, 152 N.H. 608 (2005) (discussing elements of a viable claim for negligent infliction of emotional distress); <u>Tessier v. Rockefeller</u>, 162 N.H. 324 (2011) (discussing elements of a viable claim for intentional infliction of emotional distress). <u>See also</u> <u>Corso v. Merrill</u>, 119 N.H. 647 (1979). Harriman implicitly acknowledges that fact, insofar as he does not object to VRM's motion to the extent it seeks dismissal of those claims. Consequently, Harriman's claims against VRM for intentional infliction of emotional distress (count four) and negligent infliction of emotional distress (count five) must also be dismissed for failure to state a claim.

### Conclusion

For the foregoing reasons, as well as those set forth in defendant's legal memorandum, Vendor Resource Management, Inc.'s motion to dismiss all claims asserted against it (document no. 16) is granted.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

February 20, 2015

cc:  Donna-Marie Cote, Esq.
     John B. Schulte, Esq.
     James Q. Shirley, Esq.
     Emily M. Doherty, Esq.
     Wilfred J. Desmarais, Jr., Esq.